CASTON *et al. v.* WILKINSON COUNTY SCHOOL BOARD *et al.*

(Division B.   May 14, 1934.)

[154 So. 714.   No. 31148.]

243

Green, Green & Jackson, of Jackson, and D. C. Bramlette, of Woodville, for appellants.

**Jones & Stockett,** of Woodville, for appellees and cross-appellants.

**C. T. Gordon,** of Liberty, for appellees.

Argued orally by **D. C. Bramlette**, for appellant, and by **A. H. Jones** and **C. T. Gordon**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellants, who are qualified electors, property owners, taxpayers, and residents of certain territory in Wilkinson county, which territory the school board attempted to add to the Beech Stand consolidated school district of said county, filed their bill in the chancery court against the school board of the county, the county superintendent of education, and two trustees of the Beech Stand consolidated school to vacate and have the court declare void an order of the school board making such annexation and enjoin its enforcement. The cause was heard on original bill, answers, cross-bill, demurrer to the cross-bill, which was sustained, and proof, resulting in a decree in favor of the validity of the district as enlarged by the school board.

The school board proceeded upon the theory that what was done by it was authorized by section 6584, Code of 1930. The applicable provisions of that section are the

first paragraph and paragraphs (a) and (e), which follow:

"The county school board shall have full jurisdiction at any regular meeting, or at a special meeting called for that purpose to create, alter, or abolish any common school district of the county; to consolidate two or more districts or parts of districts or one district and one or more parts of districts into a consolidated school district or otherwise create, alter, or abolish any consolidated district; to create, alter, or abolish a special consolidated district, as defined in this chapter; to create, alter, or abolish a rural separate school district; and with the consent of the trustees of a municipal separate school district may add thereto any part of a county adjoining such municipal separate school district.

"Such jurisdiction shall be exercised within the following limitations, to-wit:

"(a) Whenever the county school board shall create, alter, or abolish a consolidated school district, a special consolidated school district, or a rural separate school district without a petition as hereinafter provided, then the school board shall publish the order creating, altering, or abolishing any of such districts, duly certified by the president of said board, in a newspaper published in said county and having a general circulation therein once each week for three consecutive weeks. Said school board shall also give notice that unless a petition is filed as hereinafter provided within thirty days after the publication of the first notice, then said order shall become final.

"In the event twenty per centum of the qualified electors of the school district created, altered, or abolished by such order of the school board shall file a petition with the president of the school board within thirty days after the first publication of the notice as hereinbefore provided for, against the creation, alteration, or abolishment of such district, then an election shall be called and held, on order of the school board by the county election com-

mission, after legal notice thereof is published within thirty days after the filing of such petition at which election the question as to whether or not such district shall be created, altered, or abolished, shall be submitted to the qualified electors of the district, or districts, or parts of districts, affected. If a majority of those voting in said election in each district affected shall vote in favor of the order of the school board, then such order shall become final. Should a majority of those voting in said election, in either district or parts of districts, vote against the order of the school board, then the order of the school board shall be void, and no further attempt to make the change in question shall be made for a period of at least two years.

"(e) Whenever a petition signed by a majority of the qualified electors residing in a certain specified area of an existing common school district, consolidated school district, special consolidated school district, or rural separate school district, is filed with the president of the county school board requesting that certain territory fully described therein be taken from such existing district, and the county school board, after fully considering the matter, adjudge that taking such territory from such existing school district will not seriously interfere with or impair the efficiency of such school district, then the county school board shall take such territory from such school district and assign it to some other district other than a common school district and its order shall be final without publication of notice as hereinbefore provided for; provided, however, that the board of supervisors of said county shall continue to levy taxes on such territory sufficient to pay its pro rata part of all outstanding indebtedness due by such school district at the time such territory is taken therefrom."

On March 9, 1933, the school board, at a special meeting, made an order purporting to annex certain territory to the Beech Stand consolidated school district, which

added territory was from four common school districts, Hiram, Crooked Creek, Homer Hill, and Hopewell. On March 15, 1933, the school board prepared a notice of their action for publication, as provided by the statute. The first publication of the notice was made on March 18, 1933. On April 1st of the same year, petitions were filed for an election, which the school board ordered at a meeting held on April 14th. The county election commissioners gave notice of the election on April 24, 1933, and the election was held on May 30, 1933. It will be observed from this statement that, as required by the statute, the petitions for election were filed within thirty days after the publication of the first notice of the action of the school board in forming the district, and the notice of election was published within thirty days after the filing of the petitions therefor. The result of the election was as follows: Hopewell district, for, 0, against, 5; Homer Hill district, for, 12, against, 15; Crooked Creek district, for, 8, against, 8; Hiram district, for, 8, against, 5.

At a meeting of the school board subsequent to the election, the board entered an order on its minutes undertaking to annex the territory in the Hiram district and the Crooked Creek district but none of the territory in the Hopewell and Homer Hill districts. The board proceeded on the theory that under the law it had the right to annex the Crooked Creek and Hiram districts because those districts had not voted against annexation, but that it had no right to annex the territory of the other two districts because they had voted against annexation.

The order of March 9, 1933, the first order made by the school board undertaking to form the new district, was at a special meeting of the board. The recitals in the order as to the character of the meeting and how it was called is in this language: "At a special meeting of the county school board held and convened at the courthouse at Woodville, Mississippi, on this day in pursuance of a written call by mail properly addressed to each member

of the board there were present the following members, to-wit: J. N. Miller, County Superintendent of Education; James M. Sessions, R. B. Row, L. B. Robinson, Howard Scott, and C. C. Cassels, and being all the members of said board." There is nothing in the order to show the purpose of the special meeting, and the order is also silent as to whether the public was notified of the meeting by publication in a newspaper.

Section 6583, Code of 1930, is in this language: "The county superintendent as president shall convene the county school board annually not later than June 15th upon written notice by mail properly addressed by him to each member thereof and upon notice duly published for at least two successive weeks immediately preceding such meeting in some newspaper of general circulation in the county. At said annual meeting the board shall define the boundaries of the school districts of the county outside of the separate school districts or make alterations therein and designate the location of the schoolhouse in each district where the same has not already been located; and also to transact any other business authorized by law. Special sessions of the board may be held and convened at such times and at such places as the president may appoint on written call by mail properly addressed to each member of the board."

It will be observed from the statute that the annual meetings of the school board are required to be on notice by mail to the members of the board and in addition newspaper publication of notice to the public; and at such annual meetings the board is expressly authorized to exercise the powers conferred by section 6584, Code of 1930. The last clause of the section provides that special sessions on written call by mail to the members of the board may be held. The first part of section 6584 provides that the county school board shall have full jurisdiction at any regular meeting, "or at a special meeting *called for that purpose* to create, alter, or abolish any common

school district of the county." (Italics ours.) Can the school board exercise these important powers at a special meeting without notification to the public by newspaper publication? Although section 6583 does not say so in so many words, we are of the opinion that was its plain intendment. The public is vitally interested in such matters; it ought to have an opportunity to be present and be heard for or against any proposed action of the board. Certainly, under the first and second clauses of the statute the board, at its annual meetings, could not rearrange or consolidate school districts without notification to the public of the time and place of its meetings. Under the last clause of the statute, providing for special meetings, the board may at such meetings transact any other business than the alteration and consolidation of school districts and the location of schoolhouses. If this jurisdiction could be exercised by the board at special meetings of which the public was not notified, it would be in the power of the board to destroy one of the main purposes of the statute, namely, a hearing by the public. There are two conditions precedent to the exercise of this character of jurisdiction by the board: The minutes of the board should have shown affirmatively the purpose for which the special meeting was called, and also notice by mail and publication. They do not so show. The original order of the board forming the consolidated district is therefore void. But, if it were valid to start with, the result would be the same on account of what followed.

Under the second division of paragraph (a) of section 6584, Code of 1930, the school board was not authorized to order an election unless twenty per cent. of the qualified electors of the entire proposed consolidated district petitioned therefor; in other words, twenty per cent. of the qualified electors of all the districts, including Beech Stand. This was not done. There were only twenty per cent. of the qualified electors of the four districts other than Beech Stand who petitioned therefor, and, in de-

termining the percentage of the qualified electors petitioning, those residing in the Beech Stand district were not considered. It is true that there is an agreeement by the parties in the record that the election was regularly held. That does not mean, however, that the conditions precedent to a legal election existed.

Conceding, however, that the election was authorized and legally held, the result was against the formation of the consolidated district; the Hiram district only voted in favor of the consolidation, and the qualified electors in the original Beech Stand district were not given an opportunity to vote on the question, no election was ordered or had in that district. The statute in unmistakable language provides that an election must be held in each of the districts or parts of district affected. All five of these districts were affected. The statute further provides that, if a majority of those voting in the election in either of the districts or parts of districts affected vote against the order of the school board, such order shall be void. Putting it differently, each of the districts or parts of districts affected vote as a separate unit, and, if any one of the units votes against the consolidation, the whole scheme goes down. The question before the electors in each district is not whether their district alone shall become a part of the consolidation, but whether it shall go into the plan with the other districts affected. Putting the proposition concretely, the qualified electors of the original Beech Stand district had a right to vote on the question whether it would go into the consolidation with all of the other districts and not one district alone, and that is true of each of the other four districts; in other words, whether they would all go in together. The record demonstrates that the qualified electors of the five districts were given no such opportunity.

The final order of the board forming the consolidated district left out the Hopewell and Homer Hill districts; thereby the original order of March 9, 1933, was changed

to that extent. In other words, the original order formed one district, and the final order formed another and smaller district. If the original order forming the district was invalid upon the grounds that the petition for the election and the election itself were invalid, as we have held they were, still the final order forming the smaller consolidated district is also invalid because of the failure to comply with paragraph (e) of section 6584, Code of 1930. However, a further discussion of these questions would be fruitless, because we have above held that the original order itself, and all proceedings had subsequent thereto, were invalid.

Reversed, and judgment here for appellant.